# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TRUSTMARK INSURANCE CO. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 5561 |
| | ) | |
| TRANSAMERICA OCCIDENTAL | ) | Judge Castillo |
| LIFE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Trustmark Insurance Co. ("Plaintiff") filed a lawsuit against Transamerica Occidental Life Insurance Co. ("Defendant") in the Circuit Court of Lake County, Illinois, seeking a declaratory judgment regarding the validity of a settlement agreement allegedly reached between the parties. (R. 1, Notice of Removal.) Defendant removed the case pursuant to 28 U.S.C. §§ 1441 and 1446 on the basis of diversity jurisdiction. (R. 1, Notice of Removal.) Presently before the Court is Defendant's Motion to Compel Arbitration and Stay These Proceedings. (R. 16, Def's Mot.) For the following reasons, Defendant's motion is granted.

## RELEVANT FACTS

In 2001, Plaintiff, Defendant, and American General Assurance Company ("American General"), who is not a party to this action, entered into a Reinsurance Services Administration Agreement ("Administration Agreement"), wherein Defendant agreed to provide reinsurance administration services for Plaintiff and American General. (R. 12, Am. Compl. ¶ 8.) In July 2002, Plaintiff canceled the Administration Agreement. (*Id.* ¶ 9.) Sometime thereafter, a dispute

1

arose between the parties about Defendant's performance of its obligations under the Administration Agreement.[1] (*Id.* ¶ 10.) Defendant, in turn, claimed that both Plaintiff and American General had failed to pay outstanding invoices for administration services Defendant had rendered. (*Id.*) On August 26, 2004, Defendant demanded arbitration of the dispute pursuant to the Administration Agreement, which provides in pertinent part:

> As a condition precedent to any right of action hereunder, any dispute or difference between either of the Companies [Plaintiff and American General] and the Consultant [Defendant] related to the interpretation or performance of this Agreement, including its formation or validity, or any transaction under this Agreement, whether arising before or after termination, shall be submitted to arbitration.

(R. 18, Def.'s Mem. in Supp. of Mot., Ex. A, Administration Agreement, Art. XI.) Plaintiff agreed to arbitrate the matter, and each party appointed an arbitrator.[2] (R. 12, Am. Compl. ¶¶ 11-12.)

During the pendency of the arbitrator selection process, the parties engaged in settlement discussions on their own. (*Id.* ¶ 12.) On June 7, 2006, Defendant offered to accept $270,000 from Plaintiff to settle the dispute over the unpaid administration services. (*Id.* ¶ 12 & Ex. A, Email dated June 7, 2006.) On June 14, 2006, Plaintiff responded that it would agree to pay Defendant $270,000 for administration services rendered, conditioned on Plaintiff's receipt of an acceptable written settlement agreement. (*Id.* ¶ 13 & Ex. B, Email dated June 14, 2006.) Shortly thereafter, Plaintiff transmitted a proposed settlement agreement to Defendant which included a

---

[1] The details of the underlying dispute, including the date the dispute first arose, are not included in the documents before us.

[2] The documents before us do not disclose the status of the dispute between Defendant and American General over an unpaid invoice issued to American General.

2

broad release by Defendant of all claims "under or pursuant to the provisions of the aforesaid Administration Agreement. . . ." (R. 12, Am. Compl., Ex. B, Settlement Agreement at 1-2.) This document was never signed by Defendant. (R. 12, Am. Compl. ¶ 20.)

On July 10, 2006, Defendant advised Plaintiff via email that the $270,000 settlement offer had been made in error. (*Id.* ¶ 15 & Ex. C, Email dated July 10, 2006.) Defense counsel explained that the offer had been based upon an "incorrect calculation" concerning the value of Defendant's claim for unpaid administration services.[3] (*Id.* ¶ 15 & Ex. C.) Defense counsel revoked the $270,000 offer and further advised that the written settlement agreement drafted by Plaintiff was unacceptable. (*Id.*) Settlement discussions thereafter fell apart, and no formal written settlement was ever reached, nor did the parties proceed to arbitration of the underlying dispute. (*Id.* ¶¶ 15-16.)

In August 2006, Plaintiff filed suit in state court claiming that Defendant breached the parties' settlement agreement by failing to honor the $270,000 offer. (*Id.* ¶¶ 14-15; R. 1, Notice of Removal.) The case was thereafter removed to this Court. (R. 1, Notice of Removal.) Plaintiff then filed an Amended Complaint, claiming that "Transamerica, through its attorney and agent, made an unconditional offer to settle this matter for $270,000, which was unconditionally

---

[3] According to counsel's email, the proposed $270,000 settlement offer was intended to represent 50 percent of the amount Defendant claimed to be due from Plaintiff for unpaid administration services. (R. 12-4, Am. Compl., Ex. C, Email dated July 10, 2006.) In other words, Defendant agreed to accept a discounted amount on the unpaid invoices to settle the parties' dispute. In calculating the proposed settlement amount, however, defense counsel mistakenly used an invoice Defendant had issued to American General instead of Plaintiff. The invoice issued to American General was for $540,000, while the invoice issued to Plaintiff was for a little over $1 million, so that the settlement offer should have been roughly $500,000. (*Id.*) In his email counsel suggested that the error should have been apparent to Plaintiff given the course of their settlement discussions. (*Id.*)

3

accepted by Trustmark. Consequently, there was a valid settlement agreement between Transamerica and Trustmark." (R. 12, Am. Compl. ¶ 14.) Plaintiff seeks a declaratory judgment that the settlement agreement is valid and seeks specific performance of the settlement terms. (*Id.* ¶¶ 17-24, 25-31.)

Defendant has filed a motion to compel arbitration, claiming that the dispute concerning the validity of the settlement agreement falls within the scope of the Administration Agreement's arbitration clause. (R. 18, Def.'s Mem. in Supp. of Mot. at 1.) Plaintiff disagrees, arguing that although the parties' initial dispute may have been arbitrable, the dispute regarding the validity of the proposed settlement agreement is not. (R. 21, Pl.'s Resp. to Def.'s Mot. at 2.)

## LEGAL STANDARDS

The Federal Arbitration Act ("FAA") embodies a federal policy favoring enforcement of arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The FAA provides that an arbitration clause in a contract involving a commercial transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. A court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. A court's decision to stay proceedings pending arbitration is a question of contract interpretation, and an arbitration clause cannot be enforced against a party who has not agreed to be bound. *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H.*

4

*Cone Mem'l Hosp.*, 460 U.S. at 24-25. Furthermore, "a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (citation and internal quotation marks omitted).

## ANALYSIS

To compel arbitration, a party must show (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). Here, Plaintiff does not dispute that the Administration Agreement contains a valid arbitration agreement, and it is apparent that Plaintiff has refused to submit the dispute over the settlement agreement to arbitration. (*See* R. 21, Pl's Resp. Def.'s Mot. at 3.) Therefore, the sole issue we must decide is whether the parties' settlement dispute falls within the scope of the arbitration clause contained in the Administration Agreement. (*Id.*) In deciding whether the parties agreed to arbitrate a certain matter, courts apply state contract law governing the formation of contracts. *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005).

The parties agree that Illinois law applies here. (R. 18, Def.'s Mem. in Supp. of Mot., Ex. A, Administration Agreement, Art. XII(C) ("This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois . . . .") Under Illinois law, the Court must look to the plain language of the contract and also must construe the contract as a whole. *Brooklyn Bagel Boys, Inc. v. Earthgrain Ref. Dough Prod., Inc.*, 212 F.3d 373, 378 (7th Cir. 2000); *William Blair & Co., LLC v. FI Liquidation Corp.*, 830 N.E.2d 760, 770 (Ill. App. Ct.

5

2005). Additionally, "a court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included." *Gallagher v. Lenart*, 854 N.E.2d 800, 807 (Ill. App. Ct. 2006).

Here, the arbitration clause to which the parties agreed covers "any dispute or difference" between the parties "related to the interpretation or performance" of the Administration Agreement, "including its formation or validity, or any transaction" thereunder. (R. 18, Def.'s Motion, Ex. A, Administration Agreement, Art. XI.) The arbitration clause applies to disputes that occur both "before or after termination" of the Administration Agreement. (*Id.*) This type of arbitration clause, encompassing all disputes "related to" the parties' agreement, is considered extremely broad. *See Kiefer Specialty Flooring, Inc.*, 174 F.3d at 909-10; *see also Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 53-54 (7th Cir. 1995) (giving expansive reading to arbitration clause that governed all claims "relating to" breach of parties' agreement); *Welborn Clinic v. Medquist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002) (characterizing arbitration clause covering all claims either "arising out of" or "relating to" parties' agreement as "a very broad, standard arbitration clause.").

Under a plain reading, the broadly worded arbitration clause contained in the Administration Agreement encompasses the parties' dispute over the validity of the settlement agreement, which is "related to" the parties' performance of the Administration Agreement and the payment of funds allegedly owed to Defendant thereunder. Nothing in the clause indicates that the parties intended to exclude disputes arising over settlement of an alleged breach of the Administration Agreement. Parties to a broadly worded arbitration clause who fail to exclude a

6

particular type of dispute are assumed to have intended to include such disputes within the ambit of their agreement. *See Sweet Dreams Unlimited v. Dial-A-Mattress, Int'l, Ltd.*, 1 F.3d 639, 642-43 (7th Cir. 1993). Another District Court in this Circuit faced with similar facts found that the parties' dispute over a purported settlement was within the scope of their underlying arbitration agreement. *See Prime Vision Health, Inc. v. Indiana Eye Clinic, P.C.*, No. IP00-0096-C-B/S, 2000 WL 977397 (S.D. Ind. July 13, 2000) (holding that arbitration clause covering "[a]ny controversy or claim arising from or relating to this contract" covered dispute over validity of settlement reached prior to arbitration); *see also ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24 (2d Cir. 2002) (holding that parties' dispute over proposal to restructure underlying agreement fell within the scope of broadly worded arbitration clause contained in original agreement).

Plaintiff contends that the arbitration clause was narrowly drafted and thus excludes the settlement dispute, attaching significance to the fact that the arbitration clause does not contain the phrase "arising out of." (R. 21, Pl.'s Resp. to Def.'s Mot. at 5-7.) While parties often choose to include both the "arising out of" and "relating to" language in an arbitration clause, *see Sweet Dreams*, 1 F.3d at 642, we can discern in the case law no magic to the phrase "arising out of," nor has Plaintiff pointed us to any such authority.[4] The phrases "arising out of" and "related to" both have a very broad scope. *See Welborn Clinic*, 301 F.3d at 639; *Matthews*, 72 F.3d at 53-54. Indeed, several courts have held that the term "relating to" has an even broader scope than the term "arising out of." *See Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128-29 (2d

---

[4] We find Plaintiff's citation to *Thorne v. Butler*, 349 N.E.2d 451 (Ill. App. Ct. 1976), unhelpful because that case did not involve an arbitration agreement.

7

Cir. 2001) (observing that the term "related to" is defined more broadly than the term "arising out of"); *Tracer Research Corp. v. Nat'l Environ. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) (concluding that "relating to" language in an arbitration clause is broader than one covering disputes "arising out of" agreement); *Vermont Pure Holdings, Ltd. v. Descartes Sys. Group, Inc.*, 140 F. Supp.2d 331, 335 (D. Vt. 2001) ("[T]he term 'relating to' has a much broader meaning than 'arising out of.'"); *Int'l Talent Group, Inc. v. Copyright Mgmt., Inc.*, 629 F. Supp. 587, 592 (S.D.N.Y. 1986) ("An arbitration clause covering claims 'relating to' a contract is broader than a clause covering claims 'arising out of' a contract."). We therefore find Plaintiff's argument unavailing.

Given the plain language of the arbitration clause to which the parties agreed, and bearing in mind that we must resolve any disputes about the scope of the arbitration clause in favor of arbitration, we conclude that the parties' settlement dispute falls within the scope of the arbitration clause. Accordingly, this matter must be submitted to arbitration.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration and Stay These Proceedings (R. 16) is granted. Proceedings are stayed until such time as arbitration has been held in accordance with the terms of the Administration Agreement.

ENTERED:

Ruben Castillo
United States District Judge

**Dated: May 1, 2007**